Date signed August 24, 2007



**JAMES F. SCHNEIDER**
**U. S. BANKRUPTCY JUDGE**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND

In re:                            *

MICHELE Y. WILLIAMS,              *        Case No. 07-11502-JS

    Debtor                       *        (Chapter 13)

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### *MEMORANDUM OPINION SUSTAINING DEBTOR'S OBJECTION TO CLAIM OF KATE BARNHART*

The matter before the Court is the debtor's objection to the Claim No. 10 filed by Kate Barnhart in the amount of $9453.90. For the reasons stated, the objection will be sustained and the claim will be disallowed.

### *FINDINGS OF FACT*

1. On February 16, 2007, the debtor, Michele Y. Williams ("Williams"), filed the instant Chapter 13 bankruptcy petition in this Court.

2. On April 13, 2007, Kate Barnhart ("Barnhart"), filed a proof of claim for $9,453.90, representing unpaid wages and business expenses (Claim No. 10).

3. In March 2006, Barnhart was interviewed for a position with Master-Marer, Inc. ("MMI"), a general construction and development company incorporated under the laws of Maryland. Williams was present at the interview, with other company officials.

4. Williams was a director of MMI, with her husband, Dana Williams, and Eric L. Douglass, Sr. She was also an incorporator of MMI, listing her home address in the articles of incorporation as the principal office of MMI and designating herself as resident agent of the corporation.

5. On April 3, 2006, Barnhart received an offer of employment from MMI as a senior project manager, at a weekly salary of $1,000, plus an annual minimum income of $18,000 in bonuses and commissions.

6. Barnhart worked unofficially for MMI for two weeks without compensation. She agreed to this arrangement to reassure herself that she was comfortable working for MMI and that she would be able to perform her duties.

7. After the two-week period, Barnhart commenced her employment with MMI.

8. Her employment with MMI lasted only for nine weeks, of which Barnhart was paid for only five.

9. Throughout the period that Barnhart was employed, MMI failed to make proper withholding from her wages, and wrongfully reported her as an independent contractor for tax purposes.[1]

10. During her employment, Barnhart was required by MMI to purchase construction materials for the business by using her personal credit card. Within the first weeks of her employment, Barnhart purchased a total of $4,453.90 in materials, all charged to her personal credit card. Although she was later issued a corporate credit card, she never received reimbursement from MMI for the business expenses she charged to her personal account.

11. In June 2006, MMI requested that Barnhart and another individual lend the company $75,000, but the loan was never made.

12. The company's financial situation worsened until MMI ceased to pay Barnhart her weekly salary. By letter dated June 30, 2006, MMI terminated Barnhart's employment and offered her an alternative position with an affiliated company, the Master Realty Group, which she declined.

13. Despite repeated requests, MMI never tendered the delinquent pay or reimbursements to Barnhart.

---

[1] Eric Douglass, Sr., former Chief Financial officer of MMI, testified that all of MMI's employees were treated as independent contractors for tax purposes.

14. MMI has since ceased to operate, although no formal articles of dissolution have been filed.

## *CONCLUSIONS OF LAW*

1. Pursuant to Federal Rule of Bankruptcy Procedure 3001(f), Barnhart is entitled to a rebuttable presumption in favor of the validity of her properly-filed proof of claim.[2]  As the U. S. Court of Appeals for the Fourth Circuit has articulated:

> The Bankruptcy Code establishes a burden-shifting framework for proving the amount and validity of a claim.  The creditor's filing of a proof of claim constitutes *prima facie* evidence of the amount and validity of the claim.  The burden then shifts to the debtor to object to the claim.  The debtor must introduce evidence to rebut the claim's presumptive validity.  If the debtor carries its burden, the creditor has the ultimate burden of proving the amount and validity of the claim by a preponderance of the evidence.

*Stancill v. Harford Sands Inc.* (*In re Harford Sands Inc.*), 372 F.3d 637, 640 (4th Cir. 2004) (internal citations omitted).

2. Williams introduced the offer letter from MMI, written on MMI letterhead, as proof that Barnhart was employed by MMI, rather than by herself individually.  She also introduced articles of incorporation of MMI as proof of its corporate status at the time it employed Barnhart.  This evidence is sufficient to rebut the presumptive

---

[2]Rule 3001(f) provides: "A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."  Fed. R. Bankr. P. 3001(f).

validity of the claim against the debtor, shifting the burden to Barnhart to prove, by a preponderance of the evidence, the validity of her claim against the debtor.

3. The validity of the claim is uncontested as to amount and to the extent that MMI is the party liable for its payment. Mr. Douglass acknowledged that MMI had not fully paid Barnhart for her services.

4. The issue before the Court is whether the debtor is personally liable for the corporate debt owed to Barnhart. It is a central tenet of corporate law that a corporation has an existence separate from its shareholders, and shareholders are generally not liable for the debts of the corporation. *DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.*, 540 F.2d 681, 683 (4th Cir. 1976); *Bart Arconti & Sons, Inc. v. Ames-Ennis, Inc.*, 275 Md. 295, 310, 340 A.2d 225, 234 (1975) ("Although the courts will, in a proper case, disregard the corporate entity and deal with substance rather than form, as though a corporation did not exist, shareholders generally are not held individually liable for debts or obligations of a corporation except where it is necessary to prevent fraud or enforce a paramount equity.").

5. The threshold questions to be asked are (1) what was the nature of Williams' relationship to the corporation, (2) whether she owned or controlled it, and (3) whether she committed any act of fraud or misrepresentation on behalf of the

corporation relating to Barnhart that would render her liable to Barnhart. The claimant produced no conclusive evidence on any of these points.

6. Mr. Douglass denied that the debtor was an owner of MMI and testified that he and Dana Williams were its sole owners.

7. Whether or not the debtor was an owner of MMI is not determinative of the issue of her liability for corporate debts. In determining whether to pierce the corporate veil, courts look to the substance of the company's operations, rather than relying solely upon its proffered form. *DeWitt Truck Brokers, Inc.,* 540 F.2d at 685 ("[C]ourts are concerned with reality and not form, with how the corporation operated and the individual defendant's relationship to that operation.").

8. Piercing the corporate veil is an equitable remedy that courts employ with extreme caution. *Id.* at 683. The party requesting the relief bears the burden of proving the necessary elements. *Id*. In determining whether to pierce the corporate veil, courts consider a variety of factors, making an equitable determination based upon the totality of the circumstances. *Kinney Shoe Corp. v. Polan*, 939 F.2d 209, 211 (4th Cir. 1991). Although not an exhaustive list, factors traditionally considered by courts include (1) whether the corporation was undercapitalized, especially in the case of a closely-held corporation; (2) failure to observe corporate formalities; (3) personal use or appropriation of corporate funds by the dominant stockholder; (4) non-payment

of dividends; (5) lack of participation by other stockholders; and (6) failure to make or maintain corporate records.  *DeWitt Truck Brokers, Inc.,* 540 F.2d at 685-687.

9. Barnhart introduced evidence that six to eight months after its incorporation, MMI was unable to pay for materials necessary to complete jobs.  She used her personal credit card to pay for some of these materials, and MMI approached her for a loan to finance the purchase of additional materials.  MMI was also unable to pay Barnhart for five of her nine weeks of employment.  Further, there is evidence that MMI was unable to meet its tax or social security obligations for any of its employees.  Less than a year after its incorporation, MMI ceased to do business.  While these facts might lead to an inference of undercapitalization, in the absence of more detailed evidence concerning MMI's finances, Barnhart has failed to prove that MMI was undercapitalized.

10. Barnhart offered an affidavit of George Colley, Jr., who claimed to be a partner of Williams in MMI.  The sum and substance of the affidavit was that MMI failed to observe the proper corporate formalities and/or that MMI was one of various business entities that operated as one.  However, the affidavit was not admissible and will not be considered by this Court.

11. Under Maryland law, "the corporate entity will be disregarded only when necessary to prevent fraud or to enforce a paramount equity."  *Bart Arconti & Sons,*

*Inc.*, 275 Md. at 312, 340 A.2d at 235; *See also Dixon v. Process Corp.*, 38 Md. App. 644, 656, 382 A.2d 893, 900 (1978) ("We make clear that the rule of law in this State is that no matter how flimsily woven is the corporate curtain, it may not be flung aside except to prevent fraud or endorse a paramount equity.").

    12. The burden rests on Barnhart to prove that piercing MMI's corporate veil is necessary to prevent fraud or enforce a paramount equity. To establish fraud, Ms. Barnhart must:

> [P]rovide clear and convincing proof of each of the following five elements: (1) a material representation of a party was false, (2) falsity was known to that party or the misrepresentation was made with such reckless indifference to the truth so as to impute knowledge to him, (3) the misrepresentation was made with the purpose to defraud (scienter), (4) the person justifiably relied on the misrepresentation, and (5) the person suffered damage directly resulting from the misrepresentation.

*Colandrea v. Colandrea*, 42 Md.App. 421, 428, 401 A.2d 480, 484 (1979) (internal citations omitted).

    13. Although Barnhart has alleged fraud on the part of various individuals in relation to her non-payment, she was unable to provide clear and convincing proof of these elements at trial that would cause this Court to hold Williams personally liable.

14. Lacking evidence of fraud, Barnhart must rely upon the enforcement of a paramount equity,[3] in order to pierce the corporate veil.

15. Whatever the definition of "paramount equity" may be, the Court of Appeals has declined to pierce the corporate veil in order to enforce a paramount equity under circumstances more compelling than those here present. *See Bart Arconti & Sons, Inc.*, 275 Md. 295, 340 A.2d 225. In that case, a suit for payment by a general contractor against a subcontractor, the owners of the subcontractor ceased doing business under the corporate name, diverted all work to two other companies which they owned, used equipment owned by the former entity and operated out of the same business location. In addition, there was also evidence that the owners misappropriated corporate funds for their personal use, and made transfers of corporate assets for personal gain. Ames-Ennis, the creditor, asked the court to pierce the corporate veil and allow satisfaction of the judgment against the individual owners

---

[3] A phrase undefined by the Maryland Court of Appeals and largely unsuccessful as a grounds for piercing the corporate veil. *See Travel Comm., Inc. v. Pan Am. World Airways, Inc.*, 91 Md.App. 123, 158, 603 A.2d 1301, 1318 (1992) ("Notwithstanding its hint that enforcing a paramount equity might suffice as a reason for piercing the corporate veil, the Court of Appeals to date has not elaborated upon the meaning of this phrase or applied it in any case of which we are aware."); *Residential Warranty Corp. v. Bancroft Homes Greenspring Valley, Inc.*, 126 Md.App. 294, 307, 728 A.2d 783, 789 (1999) ("Despite the proclamation that a court may pierce the corporate veil to enforce a paramount equity, arguments that have urged a piercing of the veil for reasons other than fraud have failed in Maryland courts.") (*internal citations omitted*).

and their other companies.  The Court of Appeals reversed the trial court's entry of judgment against the owners and the affiliated companies, stating: "Nor are we aware of any Maryland case where, on facts resembling those here, the Court has allowed the corporate entity to be disregarded merely because it wished to prevent an 'evasion of legal obligations'– absent evidence of fraud or similar conduct."  275 Md. at 311-312, 340 A.2d at 235.

WHEREFORE, the debtor's objection will be SUSTAINED and the proof of claim of Kate Barnhart in the amount of $9,453.90, will be DISALLOWED.

ORDER ACCORDINGLY.

**END OF OPINION**

cc:   Ms. Michele Y. Williams
      52 Longeron Drive
      Middle River, Maryland  21120
      Debtor

      Jeffrey P. Nesson, Esquire
      11421 Reisterstown Road
      Owings Mills, Maryland  21117
      Counsel for the debtor

      Ms. Kate Barnhart
      P.O. Box 3529
      Baltimore, Maryland  21214
      Claimant

      Gerard R. Vetter, Esquire
      7310 Ritchie Highway, Suite 715
      Glen Burnie, Maryland  21061-3293
      Chapter 13 Trustee

      Office of the U.S. Trustee
      United States Courthouse
      101 West Lombard Street, Suite 2625
      Baltimore, Maryland  21201